**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**PATRICIA MARTINEZ-SKIDMORE** **PLAINTIFF**

**V.** **CASE NO. 5:26-CV-05136**

**WALMART INC.,**
**a Delaware Corporation;**
**and WAL-MART ASSOCIATES, INC.,**
**a Delaware Corporation** **DEFENDANTS**

# MEMORANDUM OPINION AND ORDER

Now before the Court are Defendants Walmart Inc., and Wal-Mart Associates, Inc.'s ("Walmart") Motion to Dismiss and Motion to Strike (Doc. 23). The Court held a Case Management Hearing on October 2, 2026, where it heard arguments from counsel on the ripe Motions. For the reasons stated herein, Walmart's Motion to Dismiss is **GRANTED** and Walmart's Motion to Strike is **DENIED**.

## I. FACTUAL BACKGROUND[1]

Plaintiff Patricia Martinez-Skidmore asserts five causes of action: Count I, Title VII Gender Discrimination; Count II, Americans with Disabilities Act ("ADA") Discrimination; Count III, Title VII Retaliation; Count IV, Arkansas Civil Rights Act ("ACRA") Discrimination; and Count V, Family and Medical Leave Act Discrimination. Walmart's Motion to Dismiss addresses only Counts I, II, and IV.

Ms. Martinez-Skidmore began working for Walmart in 2012. (Doc. 21, ¶ 15). In 2019, she was recruited by the Director of the Central Operations Data & Analytics

[1] All facts are taken from the First Amended Complaint (Doc. 21) and, for the purposes of the Motion to Dismiss, are accepted as true.

department. *Id.* ¶ 16. Throughout her tenure on the team, she remained the only woman. *Id.* ¶¶ 19, 30. In 2022, Ms. Martinez-Skidmore was laid off as part of a restructuring at Walmart and then later rehired but at a two-level demotion. *Id.* ¶¶ 23, 29.

It is after she was rehired that Ms. Martinez-Skidmore alleges her colleagues began to ostracize her and engage in "demeaning and discriminatory treatment." *Id.* ¶ 30. This treatment included comments "targeting her appearance and clothing; questioning why she wasn't participating in the men's smoke breaks 'if that is where business decisions are being made,' and asking Plaintiff if she had ever been tested for autism." *Id.* ¶ 31.

In 2023, Ms. Martinez-Skidmore was diagnosed with ADHD, autism, depression, and post-traumatic stress disorder. *Id.* ¶ 33. After learning of her autism diagnosis, Ms. Martinez-Skidmore's direct supervisor denied her request for noise-cancelling headphones. *Id.* ¶ 40.

Ms. Martinez-Skidmore also describes several incidents during which she was treated differently from her male colleagues. For example, she was required to use Walmart's third-party HR administrator to seek leave and accommodations, but none of her male colleagues were required to do so. *Id.* ¶¶ 48, 49. She was also required to work in-person and arrive early, even though her male co-workers were not. *Id.* ¶ 50. Moreover, her male colleagues worked virtually more frequently than she did, but only she was scrutinized and critiqued. *Id.* ¶ 47.

In 2024, Ms. Martinez-Skidmore took FMLA leave to attend doctors' appointments for herself and her family. *Id.* ¶ 56. However, none of her male colleagues had to take FMLA leave for such appointments. *Id.* She was also granted an ADA accommodation,

permitting her to work remotely three days a month. *Id*. ¶ 57. However, she alleges that no male colleagues had to request such accommodations to work remotely. *Id*.

Ms. Martinez-Skidmore filed her first ethics report on or about September 10, 2024, which alleged that she experienced discrimination and retaliation. *Id*. ¶ 58. After she filed the report, in January 2025, Ms. Martinez-Skidmore alleges "another instance of male colleagues ostracizing her." *Id*. ¶ 63.

Because of this treatment, Ms. Martinez-Skidmore applied for a position in a different department; she was offered the position, but the offer was later rescinded. *Id*. ¶¶ 65–68. Ms. Martinez-Skidmore continued to work on the Data Engineering team until her position was terminated on August 22, 2025. *Id*. ¶ 80. In November 2025, she was hired in the transportation department to serve in the position she currently holds, which has an equal base salary to her previous position. *Id*. ¶ 88.

Ms. Martinez-Skidmore filed a Charge of Discrimination against Walmart on June 9, 2025. In her Charge she alleged discrimination based on national origin, sex, and retaliation. She submitted a rebuttal letter after Walmart filed its Position Statement. Then, Ms. Martinez-Skidmore received her Right to Sue letter on March 13, 2026. The Original Complaint was filed on June 10, 2026.

## II. LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). "A claim has facial plausibility when the pleaded factual content allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A pleading

containing mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "The complaint must allege facts, which, when taken as true, raise more than a speculative right to relief." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008). "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001). "The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to present evidence in support of the claim." *Ward v. Arkansas Dep't of Fin. & Admin.*, 2020 WL 4032138, at *2 (W.D. Ark. July 16, 2020) (citing *Nusku v. Williams*, 490 U.S. 319, 327 (1989)).

The Supreme Court and Eighth Circuit have made clear that a plaintiff need not plead a prima facie case for discrimination to state a plausible claim for relief. *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002)). Rather, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." *Id.* (citation omitted).

> [A] plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims . . . , rather than facts that are merely consistent with such a right. While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. A district court, therefore, is not required to divine the litigant's intent and create claims that are not

> clearly raised, and it need not conjure up unpled allegations to save a complaint.

*Id*.

## III. DISCUSSION

### A. Motion to Dismiss

#### 1. Title VII Discrimination

Ms. Martinez-Skidmore alleges that she was "subject to discrimination and a hostile work environment in the workplace" because of her gender. (Doc. 21, ¶ 98). Walmart's Motion seeks to dismiss the hostile work environment claim and the claim based on discrete acts.

Walmart argues that Ms. Martinez-Skidmore's hostile work environment claim should be dismissed for two reasons. First, Walmart argues the hostile work environment claim is time-barred because she failed to timely exhaust her administrative remedies. Walmart contends that Ms. Martinez-Skidmore did not allege any acts that contributed to the hostile work environment within the 180-day period preceding the filing of her EEOC Charge. Second, Walmart argues that even if it is not time-barred, the First Amended Complaint fails to state a claim for hostile work environment. Ms. Martinez-Skidmore counters that there was a "continuing pattern of gender-based discriminatory conduct" by her supervisors. (Doc. 27-1, p. 4).

To assert a Title VII claim, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice." 42 U.S.C. § 2000e-5 (e)(1). To determine whether her hostile work environment claim was administratively exhausted, the Court must assess whether "the acts about which [Ms. Martinez-Skidmore] complains are part of the same

actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002).

> A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Id*. at 117 (quoting 42 U.S.C. § 2000e–5(e)(1)). To make out a claim for a hostile work environment under Title VII,

> a plaintiff must allege the following: (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) a casual [sic] nexus exists between the harassment and the protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take proper action.

*Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 799 (8th Cir. 2021).

The standards for making out a federal claim for hostile work environment are demanding. *Fuller v. Fiber Glass Sys., LP*, 618 F.3d 858, 863 (8th Cir. 2010). A hostile work environment requires harassment that is "so intimidating, offensive, or hostile that it poisoned the work environment." *LeGrand v. Area Res. for Cmty. & Human Servs.*, 394 F.3d 1098, 1101 (8th Cir. 2005). "At the pleading phase, the court must determine whether the alleged harassment is severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must subjectively believe her working conditions have been altered." *Warmington*, 998 F.3d at 799. This is a subjective and objective standard. *Id*.

To determine whether a work environment is hostile, courts look to the totality of the circumstances. *LeGrand*, 394 F.3d at 1102. This includes considering "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Al–Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005). However, the standard laid out above "does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace." *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 806 (8th Cir. 2013).

Ms. Martinez-Skidmore did adequately plead the first two elements of a hostile work environment claim. As a woman, she is a member of a protected class, and she pleaded that she experienced harassment and discrimination. She has also pleaded at least four instances in which her supervisors treated her differently from male counterparts by requiring her to take FMLA leave and come in early. Therefore, the Court can reasonably infer that those incidents were related to her gender.

Under the Title VII exhaustion requirement, Ms. Martinez-Skidmore needs to have alleged at least one incident that contributed to the hostile work environment that occurred between December 11, 2024, and June 9, 2025.[2] The Court concludes that the acts that allegedly occurred within and outside the 180-day period between December 11, 2024, and June 9, 2025, are not part of one unlawful employment practice that created a hostile

---

[2] She filed her EEOC Form 5 Charge on June 9, 2025, so 180 days before that is December 11, 2024.

work environment. This is because Ms. Martinez-Skidmore has failed to plead sufficient facts from which the Court could reasonably infer that the harassment affected a term, condition, or privilege of her employment. Specifically, the Court holds that there are no facts from which the Court could reasonably infer that the harassment was pervasive. The incidents that occurred within the relevant time frame and those alleged incidents that occurred outside of it were "infrequent and involved low levels of severity," nor were the incidents "physically threatening." *See Clay v. Credit Bureau Enters.*, 754 F.3d 535, 541 (8th Cir. 2014). Instead, Ms. Martinez-Skidmore's colleagues ignored her, teased her, and made off-hand remarks. *See Warmington*, 998 F.3d at 799 ("Courts must filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."). Such behavior is distasteful, but it is not enough to meet the demanding standard to plead a hostile work environment claim. Accordingly, the Court **GRANTS** Walmart's Motion as to the hostile work environment claim.

The First Amended Complaint lists incidents that occurred within and outside of the relevant statutory timeframe between December 11, 2024, and June 9, 2025, but the Complaint does not specify which incidents Ms. Martinez-Skidmore is relying on for her Title VII claim. Walmart's Motion is focused on the incidents that occurred before December 11, 2024. Walmart argues that if Ms. Martinez-Skidmore is asserting a claim for gender discrimination based on discrete acts outside of the relevant time frame, those claims should be dismissed. *See* Doc. 24, p. 12 (listing alleged incidents that occurred before December 11, 2024).

To the extent Ms. Martinez-Skidmore seeks relief based on incidents that occurred outside the 180-day timeframe, the claim should be dismissed for failure to timely exhaust her administrative remedies. *See Morgan*, 536 U.S. at 110 ("A discrete retaliatory or discriminatory act occurred on the day that it happened. A party, therefore, must file a charge within [180] days of the date of the act or lose the ability to recover for it."). Accordingly, the Court **GRANTS** Walmart's Motion to Dismiss as to the Title VII gender discrimination claim based on discrete acts that Ms. Martinez-Skidmore alleged occurred before December 11, 2024.

**2. ADA Discrimination**

Walmart seeks to dismiss Ms. Martinez-Skidmore's ADA claim because she failed to timely exhaust her administrative remedies. Walmart argues that her claim was not exhausted because she did not check the disability box in her Form 5 EEOC Charge[3] (Doc. 21-7) and that she "failed to allege any facts in her Charge relating to any alleged disability or discrimination based on disability." (Doc. 24, p. 13).[4] In her Response, Ms. Martinez-Skidmore argues that the letter she sent to the EEOC after she had filed her initial Charge is sufficient to have put Walmart on notice that she was bringing a claim for disability discrimination. She cites no cases for this proposition.

---

[3] On a motion to dismiss, the Court may consider documents attached as exhibits to the complaint. Fed. R. Civ. P. 10(c).

[4] Ms. Martinez-Skidmore's EEOC Charge states: "I believe I have been subjected to harassment, different terms/conditions, and denied a hiring opportunity based on my national origin (Hispanic) and sex (female), in retaliation to my complaint, and in violation of Title VII of the Civil Rights Act of 1964, as amended." (Doc. 21-7, p. 2).

Walmart also suggests that a letter attached to the First Amended Complaint which Ms. Martinez-Skidmore sent to the EEOC in response to Walmart's EEOC Position Statement does not satisfy the exhaustion requirement.

Ms. Martinez-Skidmore sent her rebuttal letter to the EEOC on September 10, 2025, and she received her Right to Sue letter on March 16, 2026. In her rebuttal letter (Doc. 21-9), Ms. Martinez-Skidmore explained that one of the managers "became aware of [her] protected status . . . including autism spectrum disorder and Attention-Deficit Hyperactivity Disorder." (Doc. 21-9, p. 4). She stated that the manager "began to become much colder in attitude and started making comments about [her] clothing and work ethic. Upon learning of [her] disability, [the manager] made a comment loud enough for my colleagues to hear about how he personally would not want to have others know so much about his own disabilities and that [she] should have kept it to [herself]." *Id*. at pp. 4–5. She went on to suggest that her manager's refusal to provide her with noise cancelling headphones "indicate a refusal to acknowledge [her] needs under ADA provisions." *Id*. Ms. Martinez-Skidmore alleges that her EEOC representative informed her that her rebuttal letter would be included in the EEOC investigation. (Doc. 21, ¶ 91).

At issue is whether Ms. Martinez-Skidmore's statements in an unverified rebuttal letter to the EEOC written after her Charge but before she received the Right to Sue letter are sufficient to satisfy the exhaustion requirements. The Court concludes the statements are insufficient.

To assert an ADA claim, Ms. Martinez-Skidmore "must have exhausted [her] administrative remedies with the EEOC by filing a charge of discrimination within 180 days after the alleged unlawful employment practice occurred." *Moses v. Dassault Falcon*

*Jet-Wilmington Corp.*, 894 F.3d 911, 919 (8th Cir. 2018) (citing 42 U.S.C. § 12117(a) (applying procedures of § 2000e–5 to the ADA)). The charge shall be verified in writing under oath or affirmation. 42 U.S.C. § 2000e-5; *see also Martinez-Nolan v. Tyson Poultry, Inc.*, No. 5:20-CV-5082, 2021 WL 469005, at *6 (W.D. Ark. Feb. 9, 2021). A court may "consider those claims specifically raised [in the EEOC Charge] and those that are like or reasonably related to the administrative charges that were timely brought." *Weatherly v. Ford Motor Co.*, 994 F.3d 940, 944–45 (8th Cir. 2021). However, "the scope of a judicial complaint can be no broader than the scope of the EEOC investigation that could reasonably be expected to grow out of the charge in the EEOC complaint." *Id.* at 945.

Here, Ms. Martinez-Skidmore's initial charge of discrimination does not list disability discrimination, and it does not allege any facts related to disability. The fact that the EEOC investigation would include her rebuttal letter does not save Ms. Martinez-Skidmore's disability discrimination claim. Disability discrimination is not reasonably related to those claims in her Charge.

Ms. Martinez-Skidmore also argues that the verification requirement applies only to her Charge and not to other submissions to the EEOC. Therefore, her failure to verify her rebuttal letter, she claims, does not matter. The Court disagrees. Ms. Martinez-Skidmore's rebuttal letter to the EEOC cannot satisfy the exhaustion requirements because she did not verify it by signing it under oath. *See Martinez-Nolan*, 2021 WL 469005 at *6 (concluding "a claim listed in an unverified letter or intake questionnaire is not exhausted where a subsequently filed, verified and timely charge does not include that claim").

Accordingly, the Court **GRANTS** Walmart's Motion to Dismiss as to Ms. Martinez-Skidmore's claim for disability discrimination.

### 3. ACRA Claim

Ms. Martinez-Skidmore asserts an ACRA claim based on race, gender, and disability, but she does not specify the types of claims she is asserting, such as a hostile work environment claim. Walmart's Motion interprets Ms. Martinez-Skidmore's ACRA claim as including a hostile work environment claim and a failure to accommodate. Therefore, Walmart argues that the ACRA claim should be dismissed for three reasons: (1) the claim is untimely; (2) even if the claim is timely, the First Amended Complaint fails to state a claim for hostile work environment; and (3) the ACRA does not create a cause of action for failure to accommodate.

> Any action based on employment discrimination in violation of subdivision (a)(1) of this section shall be brought within one (1) year after the alleged employment discrimination occurred, or within ninety (90) days of receipt of a "Right to Sue" letter or a notice of "Determination" from the United States Equal Employment Opportunity Commission concerning the alleged unlawful employment practice, whichever is later.

Ark. Code Ann. § 16-123-107 (c)(4).

To the extent that Ms. Martinez-Skidmore asserts an ACRA claim based on a hostile work environment, the Court concludes such a claim is barred by the statute of limitations. Although Ms. Martinez-Skidmore filed her suit on June 10, 2026, which was within ninety days of receiving her Right to Sue letter on March 16, 2026, "that letter arose from a charge that, for reasons already discussed, was either untimely or otherwise provided an insufficient basis for the claims [she] now brings. An untimely EEOC charge will not begin running the ninety-day limitations period of the ACRA." *Kirklin v. Joshen Printing and Packaging of Ark. Co.*, 911 F.3d 530, 537 (2018). Accordingly, the Court

**GRANTS** Walmart's Motion as it pertains to her ACRA claim based on a hostile work environment.

Walmart argues that the ACRA claim for disability discrimination is untimely because Ms. Martinez-Skidmore has not alleged any discriminatory acts based on disability that occurred within the statutory one-year period between June 10, 2025, and June 10, 2026. The Court agrees. The incidents that Ms. Martinez-Skidmore alleged that could plausibly give rise to disability discrimination all occurred during 2023 and 2024. For example, Ms. Martinez-Skidmore alleges that she requested noise-cancelling headphones and was denied this request. (Doc. 21, ¶ 40). Though it is unclear from the pleadings, it seems this event likely happened in 2024. She also alleges that she was denied the ability to work remotely more than three days a week sometime between 2023 and 2024. *Id.* ¶ 109. Because the incidents are not within the required one-year period, the Court concludes Ms. Martinez-Skidmore's ACRA disability discrimination is time-barred. Therefore, the Court **GRANTS** Walmart's Motion to Dismiss as to Ms. Martinez-Skidmore's ACRA claim based on disability discrimination.

**B. Motion to Strike**

Walmart asks the Court to strike paragraphs 17–60 of the First Amended Complaint that pertain to the hostile work environment and disability discrimination claims that are time barred. Walmart explains that striking these allegations from the complaint will "streamlin[e] the case to its necessary elements" and will help avoid potential discovery disputes. (Doc. 24, p. 17). Ms. Martinez-Skidmore counters that keeping the allegations will not prejudice Walmart.

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, "motions to strike . . . are viewed with disfavor and are infrequently granted." *Stanbury L. Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000).

The Court disagrees with Walmart that streamlining a complaint to avoid a discovery dispute is a basis for granting a motion to strike. If, during discovery, Walmart believes that Ms. Martinez-Skidmore's requests are irrelevant or overbroad, the Court will determine whether the requests are relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Accordingly, the Court **DENIES** Walmart's Motion to Strike.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 23) is **GRANTED** and the Motion to Strike (Doc. 23) is **DENIED**.

**IT IS SO ORDERED** on this 15th day of October, 2026.

TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE